ADAMS v. BOREN. (No. 109.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 23, 1916.)

1. BROKERS ⬥⚏86(1)—ACTION FOR COMMISSION —EVIDENCE—SUFFICIENCY.

In an action by broker for commission, evidence *held* sufficient to support a court's finding that plaintiff had performed his part of contract under which he was to receive $500 cash after closing trade without waiting until all deeds had been passed, and was entitled to agreed commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 117, 118.].

2. APPEAL AND ERROR ⬥⚏1010(1)—FINDINGS AMPLY SUPPORTED BY EVIDENCE—SETTING ASIDE.

Findings of trial court amply supported by evidence will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3981, 4024.]

3. BROKERS ⬥⚏86(1) — ACTION FOR COMMISSION—EVIDENCE—DEFENSE.

In a broker's action for commission on an exchange of land, evidence *held* insufficient to show that broker was to receive commission from both seller and purchaser barring recovery.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 117, 118.]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Suit by Thomas E. Boren against T. C. Adams. Judgment for plaintiff, and defendant appeals. Affirmed.

J. G. Woolworth, of Carthage, Young & Young, of Marshall, and R. W. Priest, of Carthage, for appellant. W. Gerard Banks and H. N. Nelson, both of Carthage, for appellee.

CONLEY, C. J. The appellee filed suit against the appellant to recover $1,000 alleged to be due appellee as commission for the sale of 4,000 acres of land belonging to the appellant, and under a contract theretofore entered into. Appellee averred that he had found a purchaser of the property in one Fred Fleming, of Dallas county, Tex., but that appellant had refused to consummate the trade. By a supplemental pleading appellee alleged:

That "the defendant contracted with and agreed to give plaintiff $1,000 for his services in finding a purchaser for said property, and that at the time said contract was closed, and the amount was due, and the plaintiff understanding that the trade was closed, and that he had done all he was to do in said matter, the defendant [appellant], being short on money, proposed to pay to plaintiff [appellee] $500 cash at once, and plaintiff [appellee] agreed to take $500 cash for the amount due him, and the defendant, having been often requested to pay said sum, refused to pay the same, or any part thereof."

It was further alleged that the $500 was not paid as agreed, and that appellee was therefore entitled to $1,000 commission.

The appellant, Adams, answered by general denial, and by special pleading that he was ready and willing to carry out the proposed trade, and denied the special contract, and alleged further that Fleming, the proposed purchaser, refused to consummate the deal.

The case was tried by the court without a jury, and judgment was awarded the appellee for $500, from which judgment appeal has been perfected to this court. The court filed findings of fact and conclusions of law, the following portion of which we adopt:

"Conclusions of Fact.

"(1) The court finds that during the summer of the year 1913 plaintiff and defendant entered into a verbal contract whereby plaintiff was to act as agent for defendant in the sale of about 4,000 acres of land in the northeastern portion of Panola county, a small portion of which lay in Caddo parish, La.

"(2) That the plaintiff, Boren, found a purchaser for said property in the person of one Fred Fleming of Dallas county, Tex., and carried said purchaser to see the property.

"(3) That some time thereafter, about the 1st of December, 1913, plaintiff and defendant met in the town of Carthage and had a conversation about the amount of commissions to be paid the plaintiff for consummating a trade, in which conversation plaintiff, Boren, stated to defendant, Adams, that he would charge him $1,000 for closing a trade, to which defendant, Adams, asked plaintiff, Boren, if he would not prefer to have $500 cash and not have to wait, to which question the plaintiff replied that he had, and it was agreed that plaintiff receive $500 cash after closing the trade without the necessity of waiting until all of the deeds had been passed.

"(4) The court further finds that the trade involved an exchange of property, in which said Fred Fleming was to exchange his residence in Dallas county, Tex., in part payment for the land of defendant, Adams, in Panola county, Tex., which land also comprises the residence of defendant, Adams.

"(5) The court further finds that prior to the time that plaintiff and defendant had their conversation that referred to commissions that defendant, Adams, had gone to Dallas upon one or more occasions and had seen the purchaser Fred Fleming and had seen the property which was to be traded to him by Fleming constituted the residence of Fleming.

"(6) The court further finds that just after the conversation between plaintiff and defendant that refers to commissions, in which it was agreed that plaintiff was to have $500, that plaintiff went to the telephone and called Fleming over the phone and had a conversation with him, at which time the plaintiff was accompanied by the defendant, Adams, and that plaintiff closed a trade with purchaser Fleming over the telephone, and that a day or two thereafter plaintiff and defendant went to Dallas at the request of the purchaser to enter into a written contract covering the exchange and sale of property.

"(7) The court further finds that on the 8th day of December, 1913, the purchaser and the defendant, Adams, entered into a written con-

tract covering the sale and exchange of property in compliance with the trade that had been closed by the plaintiff, Boren, over the telephone, and that the contract and the purchaser and all of the terms and conditions of the trade were accepted by the defendant, Adams, who signed a contract with the purchaser, and to which contract plaintiff was not a party other than being present' when the contract was executed between the defendant, Adams, and the purchaser, Fleming.

"Conclusions of Law.

"(1) The court holds that the plaintiff, Boren, having found a purchaser who was willing to purchase the property upon the terms named by the defendant, Adams, and having brought the parties together, and the defendant, Adams, having accepted the purchaser and entered into a contract with him, it being such a contract as was desired by defendant, Adams, who was acquainted with all of its terms, that the plaintiff, Boren, was released from further duties in connection with the sale of the property, and was entitled to his commission."

Appellant's first, second, third, fourth, fifth, seventh, and eighth assignments of error, in substance, attack the judgment and conclusions of the court as being contrary to the evidence, in that the testimony shows that plaintiff was not to receive compensation unless he procured a purchaser for the land who was ready, willing, and able to buy at the stipulated price, and who would complete the contract by paying for same; that the contract covering the sale and exchange of property between appellant and proposed purchaser was not an enforceable contract, in that it affected the homestead of the proposed purchaser, and said contract was not signed by the wife; that the contract was unilateral and without consideration; and that the proposed purchaser breached the contract of sale, and for that reason the sale was never consummated.

[1] We do not deem it necessary to consider in detail these various assignments of error, and the propositions made thereunder. The pivotal question in this case is to determine whether or not there is evidence in the record sustaining the finding of the trial court as to the nature of the contract between appellant and appellee. If the trial court's finding to the effect that the contract was one by which appellant was to pay appellee cash for bringing the appellant and proposed purchaser together, and was not dependent upon the actual consummation of the trade, that is, the execution of deed, etc., is sustained by the evidence, then, of course, the questions raised under the above assignment are immaterial.

The appellee Boren testified:

"I am the plaintiff in this case. I am acquainted with Mr. T. C. Adams. I had some dealings with him in the year 1913. I was handling his property known as the Adams plantation on the east side of the river as a land agent. Mr. Adams had turned over to me this sale for him, and I found a purchaser, and I finally consummated the sale, agreed upon the terms. That was in the fall of 1913. I had corresponded some with Mr. Fred Fleming of Dallas in regard to the land, and made several different propositions to him under Mr. Adams'

agreement or direction, and he would reject a proposition and I would then put up another proposition to him. We finally agreed upon the terms. During the progress of negotiations Mr. Adams visited Dallas. I think that was the second time, however, he had been out and looked at Mr. Fleming's property. In the proposition to sell Mr. Adams' plantation to Mr. Fleming Mr. Fleming wanted to put in his Dallas property as a cash payment. Mr. Adams went out and looked at the property, as I understood, and I put up a proposition to Mr. Fleming in which I priced Mr. Adams' farm and I priced the gin separately and put in my commission then, $2,000; but before submitting the proposition I put it up to Mr. Adams and asked him if he didn't think that was a fair commission, and he said it was, so I put the proposition up to Mr. Fleming. Mr. Fleming replied that he wouldn't do that, that the gin must go in with the land under the proposition, and that he would not pay my commission at all, that that was Mr. Adams' business. When Mr. Adams went to Dallas, I think the second time, and came by Carthage, and I met up with him here near the First National Bank, he told me that he liked the property in Dallas and he believed that he could close the trade, and said, 'Now what are you going to charge me for your services?' I said, 'Claude, in order to close the matter up, as I have been working on it for some little bit, I will charge you $1,000, and that is a low commission for a sale of that size.' He said, 'Hadn't you rather have $500 in cash and not wait?' I studied a minute or two and said that I would; that a bird in hand was worth two in the bush. When I said that, he said, 'Let's go up in the phone office upstairs and I will call Mr. Fleming up and close the trade.' We went up there and called Mr. Fleming and we closed the trade. I closed this trade of Claude's on terms proposed, and he asked me if I wouldn't rather have $500 in cash than to wait, and I told him I would. Five per cent. commission on that transaction would have been $3,750, instead of $500. I did not have any agreement with Mr. Adams as to what I was to get before I went into the phone office. Claude had suggested that I put the commission in on Mr. Fleming, the $2,000, and Mr. Fleming shut down on that proposition, and when Claude returned from Dallas the time I speak of he asked what I was going to charge him, and I told him $1,000. He had made up his mind to make the deal, and wanted to know how much I was going to charge him, and I told him I would let him off for $1,000, and he asked me if I wouldn't rather have $500 in cash than to wait, and I told him I would."

Appellant, Adams, on the other hand, testified as follows:

"I had met Judge Boren in front of the bank, and asked him how much he was going to charge me for closing the deal, but I don't believe it was in those exact words as you have asked it, and he told me that he would charge me about $1,000, and I says to him, 'I can't pay that much, because I am not getting a dollar in cash out of the deal; it is part trade and part vendor's lien notes; therefore I can't pay any $1,000;' and he knows I said that; and I told him that I would pay him $500 cash as soon as the deeds were signed and delivered to each party."

[2] It is to be seen that the terms of the contract between appellant and appellee involved a sharply disputed issue. The trial court, however, in its third finding of fact, determined that the appellee's version of the contract was the correct one. The trial court having so decided this issue, and his finding being amply supported by the evi-

dence, it is not within the province of this court to disturb such finding.

The contract as found by the court was a special one between the parties, and must determine their respective rights. The general rules relating to contracts for broker's commissions, as raised under these several assignments, and as exemplified in the authorities cited, have no application to this particular contract. Under the terms of the agreement as found by the trial court, the appellee was to receive the $500 commission in cash, and without the delay incident to the actual closing of the trade by the exchange of deed, etc.

These assignments of error are therefore overruled.

[3] The sixth assignment of error is as follows:

"The judgment is contrary to the law and the evidence, because the testimony shows that the plaintiff [appellee] in his negotiations was to receive commissions from both purchaser and seller."

This assignment is based upon a misconception of the testimony. We find no evidence in the record sustaining the assertion that appellee was to receive commissions from both the purchaser and the vendor in the sale of this particular land. On this question the appellee testified:

"Mr. Fleming was not to get from me any commissions on this sale. This was an individual sale to Mr. Fleming by me, and I was not to divide commissions with him nor the fidelity company. I did not represent Mr. Fleming, but represented Mr. Adams."

The evidence clearly demonstrates that there was an understanding and agreement between the appellee, Boren, and Mr. Fleming, who was also in the real estate business in Dallas, that in the sale of other lands which might be made in Dallas by Mr. Fleming, and which had been previously listed with Mr. Fleming, that the commissions would be divided. This agreement did not include the individual sale of the Adams land to Mr. Fleming.

For the reason herein stated, this assignment is overruled.

Finding no error in the trial of this cause, the judgment of the lower court is affirmed.

BROOKE, J., not sitting.